UNITED STATES of America, Plaintiff,

v.

Marvin BERKOWITZ, Defendant.

No. 88 CR 873.

United States District Court,
N.D. Illinois, E.D.

May 14, 1991.

Fred Foreman, U.S. Atty. by Jacqueline O. Stern, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

William J. Stevens, Chicago, Ill., for defendant.

## ORDER

BUA, District Judge.

Pursuant to the ruling of the Seventh Circuit in *United States v. Berkowitz*, 927 F.2d 1376 (7th Cir.1991), the court has held an evidentiary hearing concerning the legality of Marvin Berkowitz's arrest. Based on the evidence presented at the hearing, the court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. On November 7, 1988 around 8:45 a.m. Marvin Berkowitz was arrested at his home located at 6738 N. Richmond, Chicago, Illinois.

2. The entry team consisted of Special Agents Merle Shearer and Frank Calabrese of the Internal Revenue Service ("IRS"). Shearer made the arrest. Special Agent William Maloney of the IRS was part of the backup team.

3. Shearer went to the front door of Berkowitz's house, opened the storm door, and rang the doorbell. At this time, Shearer was situated on the landing of the stairs leading to the front door of the house.

4. Berkowitz opened the door. He stood in the doorway, inside his house.

5. Immediately upon Berkowitz's opening of the door, Shearer began speaking. Shearer called Berkowitz by name and asked Berkowitz if Berkowitz remembered him. Shearer then stated that Berkowitz was under arrest for obstruction of justice and theft of government property. At the time Shearer told Berkowitz that he was under arrest, Shearer was still positioned on the landing outside of the house.

6. Berkowitz acknowledged the arrest. He asked if he could remove his prayer shawl and other religious articles. Berkowitz then backed up into his house.

7. At this point, Shearer crossed the threshold of Berkowitz's house and followed Berkowitz into the home. Calabrese and Maloney entered Berkowitz's house shortly thereafter.

8. Shearer did not enter Berkowitz's home until after he had informed Berkowitz that he was under arrest.

9. Shearer gave credible testimony during the evidentiary hearing. Shearer's account of the events preceding and following the arrest were corroborated by agents who were part of the arrest team. Calabrese stated that Shearer was outside Berkowitz's house on the cement stoop when Shearer announced that Berkowitz was under arrest. According to Calabrese, it was only after Shearer informed Berkowitz of the charges, Berkowitz acknowledged the arrest, and Berkowitz started to leave the hallway that Shearer stepped over the threshold and went through the door.

Maloney testified that Shearer did not enter Berkowitz's house until after they had engaged in a conversation. Maloney followed Shearer into the house about three seconds after Shearer entered the home. He testified that, after following Shearer into the house, he never heard anyone tell Berkowitz that Berkowitz was under arrest.

10. The arrest report completed by Shearer the day after the arrest accurately records the details of the arrest, although the events are listed out of chronological order.

11. Berkowitz gave incredible testimony during the evidentiary hearing. Berkowitz testified that Shearer's right arm came forward, around the time that Shearer stated Berkowitz's name, to grab Berkowitz's left arm. Yet, in the affidavit submitted by

Berkowitz in support of his request for a hearing on his motion to suppress, there is no mention of these events having occurred. (Government Exhibit—Affidavit 1 at 1–3.)

12. Berkowitz has testified falsely in the past. During a detention hearing before a magistrate judge, Berkowitz testified that he did not take his passport from the United States Attorney's Office. (Government Exhibit—Transcript 2 at 124–125.) In this evidentiary hearing, however, Berkowitz agreed that his passport was included in a number of things he had removed from the United States Attorney's Office. Berkowitz also testified falsely under oath during his trial. While on trial, Berkowitz testified that he "did not have anything to do with the fact that those documents [at the United States Attorney's Office pertaining to the tax fraud case being prepared against him were] missing." (Government Exhibit—Transcript 3 at 488.) However, Berkowitz stated in this evidentiary hearing that he made arrangements to return copies of the documents and any original documents he had in his possession to the United States Attorney's Office.

## CONCLUSIONS OF LAW

1. The Seventh Circuit has outlined the law applicable to this area: *"Payton* holds the Fourth Amendment draws a clear line at the entrance of a person's house: 'Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.'" *Berkowitz*, 927 F.2d at 1386–1387 (quoting *Payton v. New York*, 445 U.S. 573, 590, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639 (1980). "Entering a person's home without a warrant to arrest him, where no exigent circumstances exist, violates this clear command." *Berkowitz*, 927 F.2d at 1387.

2. However, "[c]ourts have generally upheld arrests ... where the police go to a person's home without a warrant, knock on the door, announce from outside the home the person is under arrest when he opens the door to answer, and the person acquiesces to the arrest.... [When] the person recognizes and submits to [the law enforcement officers'] authority, ... it is not unreasonable for the police to enter the home to the extent necessary to complete the arrest." *Berkowitz*, 927 F.2d at 1386–1387.

3. The outcome of this hearing turns on the credibility of witnesses. The court has found Shearer's account of the facts to be truthful. Applying the facts of this case to the standards articulated by the Supreme Court and the Seventh Circuit, the court finds that the arrest was legal. Shearer was outside Berkowitz's house when he stated that Berkowitz was under arrest. Berkowitz acknowledged the arrest and submitted to the agents' authority. Shearer and the other agents entered Berkowitz's house only after Berkowitz submitted to their authority.

4. Since the court finds that the arrest was legal, the court finds that the seizure of documents at Berkowitz's house was also legal.

5. To the extent that any of the foregoing conclusions of law are deemed to be findings of fact, they are hereby adopted as findings of fact.

IT IS SO ORDERED.